Thank you, your honors. I represent the farmers, or a group of farmers in the San Luis Unit, and I would like to focus my remarks on the San Luis Act, 1960 Act, initially. And just to understand, or introduction, the 1960 Act provides for the construction and operation of an irrigation project. I think that is undisputed. Certainly the district court below cited as the original intent of the CVP and the San Luis Unit was to provide for irrigation and to provide for the cultivation of arid western lands. Has that been changed over the years to add other objectives? The San Luis Act has not been changed over the years, and I can address that, your honor. If there are statutes, I wanted to look at the specific language of the San Luis Act, indicate that it had not been repealed or amended. And the question in this case is, and I think what the court is asking, is have there been subsequent statutes that have amended what we believe to be the mandate set forth in the San Luis Act and the reclamation laws that it incorporates? You read my mind. And in our opinion, there certainly is no express repeal in any statute since 1960. Express repeal, you're probably right, but what about additions to the list of objectives? There are, in the CVP, the 1937 Act was amended by the CVPIA in 1992. Right. That list initially included irrigation, domestic use, municipal use, I believe. And then in 1954 was amended to include fish and wildlife purposes. And then in 1992 was further amended to, again, include fish and wildlife purposes as one of the authorized purposes for the Central Valley Project. That doesn't change the fact that the San Luis Unit Act, the 1960 Act, includes a preference for irrigation. What do you mean when you say preference? I'd like to go to the specific language of the Act. Please do. The Act provides that the principal purpose of the San Luis Unit is the furnishing of water for the irrigation of approximately 500,000 acres of land. That's the principal purpose set forth in the San Luis Act. That specific provision has never been amended. Now, the 1937 Act included other authorized provisions. That allows for Congress to enact statutes that will allow for the use of whatever those authorized uses are. But it doesn't amend this Act that says that this is an irrigation project and the principal purpose of this Act is irrigation. So what does that mean, in your view, with respect to your client's interests? Well, Your Honor, my client's – I was going to go to the second sentence, which is – Okay. And the Firebaugh decision that interpreted the second sentence to provide a mandatory duty to provide service. And that second sentence provides that the principal engineering features of said unit shall be a dam and reservoir, the San Luis Canal, the Pleasant Valley Canal, and necessary pumping plants, distribution systems, drains, channels, levees, flood works, and related facilities. It's a massive irrigation project. That's what it was. And what does that mean with respect to what your clients are entitled to, in your view? In my view, my clients are entitled to a – to be distributed irrigation water from that project. How much? The amount that they have beneficially used over the last 40 years and established under both Section 8 and the California Water Law, where Section 8 refers to the fact that you – beneficial use is the measure of the water right. So for 40 years this thing operated, the water was beneficially used, the beneficial use was equated to a particular amount, an amount of water. So you say that your clients are entitled to an amount that can be expressed in basic arithmetic. Absolutely. And what is that number? That number is the entire – Westland's water district is entitled to over a million acre feet. And what happens if there isn't enough water? And this is the problem. Yeah. You know, in drought years and low years, would that then – if there's not enough water to service that amount, would that eclipse all other interests that have been identified by Congress? In other words, would you be entitled to take the whole whatever it is that's out there? If there is a – and I think you have to be clear as to what interests have been identified by Congress and to what extent there's been a mandatory duty to serve those interests. Yeah, I understand that, but my question is, let's assume that the number that you have is greater than the amount of water available. The other interests get nothing, under your view. No. Under the historical beneficial use, when there is climactic conditions that create a shortage, they receive less under those climactic conditions. Well, if you're entitled to a certain number – I'm not trying to trap you, but if you're entitled to a certain number, then what's left if that number isn't available? Well, you're talking about the operation of the – under California law and under Section 8, the operation of what does beneficial use mean in connection with quantifying the amount of water that the beneficial owners of that water use. Well, I'm hearing you saying if there's not enough to give us what we want, we get whatever there is and nothing is left over for any other interest. That's what I'm hearing you saying. Based on historic beneficial use, we will get less if other uses – Less? Less. We will get less than the amount because that's – So something will be apportioned for the other interests? There will be an apportionment for whoever is otherwise entitled to it. And where anywhere in any of these statutes or anything that's related, is there a mandatory – you know this language better than I do. You've probably read the Norton case as many times as I have. But where is there anywhere in the language that imposes what you're saying as a mandatory duty to perform a discrete action? And Justice Scalia puts that in italics. In other words, it's not a programmatic thing. It's a discrete action. Your Honor, you're right. I've spent a lot of hours reading that case. And the discrete action here is the furnishing of water. In what amount, though? I don't understand. You're getting water. You're just not getting what you want. Look, this is a terrible case. I think everybody in California and the Western world is aware of what's happened to agricultural interests in California during low rain years. Thank goodness it's raining today. But we've been told by Justice Scalia in pretty clear terms that it's not our business to get in and run reclamation or these programs. And unless there is clearly – I think Firebaugh, the Firebaugh case that I was involved in, would be a dead letter nowadays. But in any event, you have to identify for us a mandatory duty to perform a discrete action. And what you're describing just doesn't seem to me to fall into that category. Your Honor, the – first off, I'm going to say one thing on this point. That case dealt with a remedial statute, Section 706.1. There are – there is, with respect to the waiver of sovereign immunity and the final agency action rule under Section 704, that does not necessarily represent the test if you are also seeking a remedy under 706.2. But I just want to make that clear. But I do want to go back to your point. Your point is, is this a – is the government instructed to take a discrete agency action? Yeah, discrete. And I can't think of – they are instructed to deliver water. But how much? Okay. Well, wait. That is a discrete thing to be doing, to deliver water. And they are delivering water. They are. They are. They allocated 0 percent for – in 2009, initially, it went up to 10 percent. But that's the problem. Is there a discrete duty to deliver a portion, a particular number of acre feet of water to any particular user? That's the – I think that's the hurdle. Okay. I think I can address that. And we've addressed it in our brief. The Nevada case goes to the issue of who owns the water, the benefit and the equitable ownership of that water. The – it cites Ickes, it cites the Nebraska case, and it ultimately comes to the conclusion that the water right that we're dealing with – this is a property right in California – that the water right is acquired with a legal title in the Bureau and the equitable title in those who put the water to beneficial use. And the beneficial use is the measure of that water right. That is Hornbook law. So you're back to a number. I'm back to the fact that until Congress enacts laws that override that, where there is actually a law on the other side that overrides this duty to distribute irrigation water based on beneficial use, then there is a discrete thing that the government is required to do. And we started to brief those issues in the lower court. And Judge Wanger addressed them a very, very – not very significantly because he effectively decided that there was no such duty. Right. But our point is there is such a duty. It is based on the reclamation statutes that were in existence, specifically the 1960 Act – specifically the 1960 Act duty to provide irrigation service that Firebaugh supports. And one point on that, Your Honor, is that the – in the Firebaugh decision, there is some question, and you indicated that it may not fly after the Sewa case. Which is what I anticipated in my dissent. But remember, in that case, there were appropriation riders that had the effect of stalling or stopping the final conclusion of the interceptor drain. The interceptor drain was called for in the 1960 Act, and the lower court in 2000 ruled – or before that – ruled that the interceptor drain was a mandatory aspect of the San Luis Act. However, the majority in the Firebaugh decision said no. Congress has given the Bureau options with respect to providing – fulfilling its drainage. And you'll hear more about that later today. But Congress had provided options to the Bureau as to how it was going to provide drainage. Initially, Congress didn't provide any options. It was to build the San Luis interceptor drain. A very discreet thing to be doing. But instead, Firebaugh allowed options to be allowed to the Bureau. The point is, the rest of the facilities were not subject to question. The rest of the facilities were built. There are no options. The Bureau doesn't have any options with respect to the delivery facilities for the San Luis unit. They were specified. They were set forth in the feasibility report. They were specific. They were discreet. And they were built. And the whole purpose was to deliver irrigation water pursuant to them. There can't be – if there was some question about Firebaugh because of the options associated with drainage, that's not the case in this case. Now, I read your complaint again this morning, and I looked in your briefs, and it's pretty vague in terms of what you want us to do. You're looking for injunctive relief. You say that there's nothing at law that can really help you. And how would you like the injunction to read? Is there any draft that you submitted to the district court? I didn't find one. Your Honor, first off, we – in our complaint, we cite injunctive and declaratory relief. Right. Yeah, okay. But I mean, how should that – what do you want us to order the district court to do in order to comply with what you say is this discreet legal – I wrote that down. Good. I'll read it to you. Okay. The result we want is reversal of the district court decision. Right. And a declaration that the Bureau has a mandatory duty under the statutes that we assert to operate the San Luis unit to provide irrigation service to the lands therein. So far, so good. And to provide the quantity of water that has historically been measured by beneficial use and that is pertinent to such lands. That I assume – See, now, it's that last part that hangs me up. Well – I just don't find anything like that in any of the statutes. Well, it's in the law. It's – it's – the Section 8 – Well, that language isn't in the law. Section 8 says measured. Section 8 specifically says the water is to be measured by beneficial use. That's what the whole purpose of the reclamation program was for. But the problem is the Bureau is charged with a number of different obligations in administering the water obligations. And so it has the discretion to allocate the water among all of those uses. It would be different if the only use articulated in the statute were for irrigation, but it's not. Your Honor, if – that's – that's the point. If we get to the position that these conflicting statutes are declared and are argued and some decision as to whether or not – to what extent they conflict, to what extent they can be reconciled, and to what extent that they are irreconcilable, then that – and that's typically what you would do when you've got conflicting mandates. That's – that is something that we're willing to do and wanted to do in this proceeding. But do you want to focus on just the irrigation part of it? I want to say that the statutes that we assert provide for the delivery of irrigation water based on beneficial use. If there are other statutes that conflict with that, then we are – we welcome the opportunity to argue about those. And the U.S. in this case has determined that it's not going to rely. It's not going to – it's not going to rely on those statutes, at least in this proceeding. They're not relying on those statutes. On page 38 of their brief, they indicate that. I'm not sure I'm completely following the way you sort of put this together, saying there's different statutes flying around. As I read it, Congress amended the 1937 Act with the CVPIA. And in doing that, they added mitigation, protection, and restoration of fish and wildlife as a second-tier purpose of the CVPIA so that 3406A1 really reads that the said dam and reservoir shall be used first for river regulation, improvement of navigation and flood control, second for irrigation and domestic uses, and fish and wildlife mitigation, protection, and restoration purposes, and third for power and fish and wildlife enhancement. I mean, isn't that the constellation of interests that we're now looking at? Those are certainly interests that are interests with respect to the CVP. That amendment does not amend. See, this is what I'm after. It does not amend what? It doesn't amend the 1960 Act. There is an irrigation. The 1960 Act is an irrigation project act. It is intended to provide irrigation water. It's not intended to provide irrigation water.   It's intended to provide water. It's intended to provide water. The said dam and reservoirs, what are the said dam and reservoirs? Well, the fact that they're authorized What are they? They're all the reservoirs, including the San Luis Reservoir. I agree with that. Bingo. Bingo. I mean, that's the problem. No, no. But the priority is set in the underlying Act. These are authorized uses. The priority for irrigation is set in the 1960 Act. Priority shall be used first for river. I mean, it's a priority there. Third for power. Second for irrigation. They've set a new priority in here. But you've got to look at that, at where that is. It's in the CVP Act. It authorizes the use of water. And it includes, I agree, it includes fish and wildlife in the same second tier as irrigation. But that doesn't affect, that doesn't go to the point that in 1960 they preferred irrigation over fish and wildlife. But we have to read the statutory scheme as a whole. We don't fragment the statutory scheme and then look at each section of it. We have to look at it all together in view of the purpose that Congress has articulated. And I think you're trying to isolate different parts of the statutory scheme. I've got ten seconds. I'm, Your Honors, I am waiting for the statutes to be asserted that conflict and override the statutes we're asserting. All right. We'll hear from the government. Maybe the government will clarify this for us. And then we'll give you a minute for rebuttal. Thank you, Your Honor. May it please the Court. My name is Peter Krzwicki, and I represent the United States of America. Today I will explain why this Court should affirm the District Court based on the Administrative Procedure Act. Appellant's complaint is a programmatic challenge to the Bureau's operation of the Central Valley Project and the San Luis Union. What does that mean, programmatic challenge? I mean, I think I know. But what do you mean when you say it's a programmatic challenge? That suggests that there's another kind of challenge, and this is a programmatic challenge, and we deal with it differently. What's your view of what programmatic challenge means? So my view of what programmatic challenge means is that they are really looking to change the or to tell us how our or how the Bureau should operate the Reclamation Fund and how the Bureau should operate in general, rather than looking at any specific, discrete, mandatory duty that is provided in any single statute. So to say this purpose rather than that purpose is what the water should be used for, to me, would be a programmatic challenge. And as opposed to what type of challenge? As opposed to a challenge to a discrete mandatory duty where they would say, here is a statute. It tells the Bureau to act in this exact manner. Bureau, you haven't acted that way, and so you need to do so. But that's what opposing counsel says he's doing, that you aren't complying with the 1960 Act. So that's what he says he's challenging. He's not challenging all of the other obligations that the Bureau has, just this one discrete part of your obligation. What's your response? So I have two responses to that. First, Your Honor, the nothing in the 1960 Act says provides any sort of discrete amount of water to be provided to the farmers. There's not a 5 percent, 10 percent, 20 percent, or however much percentage of the CVPIA. What about Section 8? He says Section 8 talks about beneficial use, and that's where he gets his way of describing what they want. So Section 8 is a different section, and the reason we don't think that it describes the amount of water that they have is because it describes people who – it limits its description to people who have rights under the Act, and the farmers in this case are not right holders under the Act because they don't have contracts with the government. Their irrigation districts do. So do you agree with the Policing Council's representation that the government is not relying on any other provisions of the CVPIA in defense of this cause of action? I'm sorry. I'm not sure. He says that you, in your brief on page 30, disavow reliance on any other statutes that impose any other obligations other than irrigation. Your Honor, I believe that he was referring to the fact that we do think that this case should be decided under Section 761 of the Administrative Procedure Act rather than other grounds. That is – that is our primary position in this case. But that doesn't preclude us from looking at the entire statutory scheme. No, Your Honor. It absolutely does not. You – I mean, it's – the reason it's jurisdictional is because in order to – in order to go forward in this case, there would need to be a statute that creates a mandatory discrete duty. And I don't think we've ever represented that you can't look at each statute and find those. I think that's the core of our case in this case. So did the district court rule that there was no standing under the APA? So the district court had a multitude of holdings. One of them was prudential standing and the failure to find prudential standing on a number of claims. They also did use – they also did use jurisdiction, but they did it in a way that has to do with sovereign immunity and 704 and 706. But we presented you with what we believe to be this Court's current – current law on 706-1 and that it is jurisdictional. Does the government have any responsibility at all to do anything here whatsoever? Or it can just sit by and maybe water dries up completely? I mean, is there any obligation that the government has at all? Your Honor, the government has the obligations that are listed in the CVPIA and the use that will best serve the public. And it lists the several uses that Congress told the Bureau to put the water to. So your position is that the government has total discretion to do pretty much what it pleases to do? No, Your Honor. Or no, Your Honor, respectfully, I disagree. I believe that our position is that the Bureau has discretion, but it's cabined within the purposes and the uses that are written through – that are written earlier today. So just sort of procedurally, I understand your position. Your position is you don't necessarily stand on the standing determination that was made by the district court. You proffer a different standing argument that you think defeats jurisdiction. Yes. Well, Your Honor, we believe that the district court in some way considered the jurisdictional argument that we made, but we also recognize the fact that this grounds to affirm in this case is Section 706.1 of the Administrative Procedure Act and its jurisdictional basis. I have to confess that the standing reasoning was a little convoluted to me in the district court decision. So I was curious as to whether or not you stand on that as a basis for resolution of the case. Obviously, Your Honor, we are comfortable with affirmance on any grounds. However, we do think that the best grounds is under Section 706.1 of the Administrative Procedure Act. So can you articulate that for us, how you think that works? So as best we understand, I mean, the straightforward case from this circuit was Alvarado. Alvarado said that Section 706.1 is jurisdictional. The jurisdictional requirements are the requirements that Justice Scalia discussed at length in Southern Utah Wilderness Alliance. These are that you find in any statute a mandatory duty to perform discrete agency action that has unlawfully been withheld. We fail to see any statute in this case where that could possibly have happened. I spent some time yesterday doing what we frequently do, and that is mucking around in what discrete means. In your view, what does discrete mean, you know, legally in this context? What exactly was he getting at when he said discrete? Because, you know, I mean, the other side is saying it's a discrete action to give water. And what's your view of how discrete works in this case? Your Honor, I mean, for example, some sort of direct command, some sort of thing that is beyond just the Beyond the programmatic command. Well, beyond the idea that the Bureau may operate or is authorized to do one thing, some sort of shall, some sort of imperative from Congress, they must do this action. And once you get – and whatever that action is, once we see that sort of determinative language, then we do believe we have a discrete duty. But we just don't see that language in any way that is binding on this case. Do you have for us some good examples of cases after Southwest – Southern Utah Wilderness Alliance that deal with what's a discrete action? No, Your Honor. I'm not prepared to answer that question today. I'm sorry. Well, so that doesn't help us very much. That's pretty murky, I mean, for you to tell us that that's your definition, but there's no case that supports that. So while I can't – I mean, while I can't point you to a case and I don't want to try to come up with something off the top of my head, what I can say is that the problem in this case is that we don't see any statute where the – where there's an amount of water quantified or a specific – or any sort of specific order to the court or to – rather, to the Bureau to provide any such water. Does the duty have to be specified to that degree? The duty to provide irrigation as measured by beneficial uses wouldn't be specific enough to impose a duty? So, Your Honor, the – again, the statute that discusses the beneficial – that beneficial use will be the measure limit and limit of the right discusses that in context of the Act and the fact that – and only for rights – people who hold rights under the Act. Contracts. Is that your argument? Yes, Your Honor. Due to the fact that they don't have contracts and under this Court's precedent in Israel v. Morton, they – they do not have rights under the Act. Also, the Alvarado case that you cite talks about subject matter jurisdiction. So the – the Alvarado case simply says that it is – that it is jurisdictional and it cites for that – that proposition Gross Venturi Tribe. Gross Venturi Tribe talks about the power and the authority of a court to enter orders, and that's – I mean, and that's really what we're – that really loops back to what we were discussing before. What would an order that – what would an order in this case look like under any of the statutes? There's no order that you could give that the Bureau could comply with that would – that would – that would – or there's no order that a district court could give that would be meaningful because there isn't a discrete action for them to – for them to carry out. You would just say, like, Bureau, carry out your – the – these programmatic statutes, and the Bureau would – would dutifully go and do so, but that's what they've been doing all along. I'm not sure that's what Alvarado was talking about. That was involved in Indian tribe and people seeking to be admitted in the tribe. And so that's a kind of peculiar circumstance. Well, so, Your Honor, I – I believe – I do believe that Alvarado cited a case called Gross Venturi Tribe. And I can point you to the – the pin site if you would like. Is that in your brief, the Gross Venturi Tribe case? No, Your Honor. We – we rely on Alvarado, but – but Alvarado – but Alvarado's basis for that proposition – proposition is – So what's the language in – in Alvarado that you rely upon to support your argument that there is no subject matter jurisdiction in this case? What's the precise language there? As best I understand it, the language is, absent an assertion that the agency failed to take a discreet agency action that it is required to take under Section 706.1, a claim may be – may be dismissed for lack of jurisdiction. It's a broad principle. And what's the Gross Venturi Tribe citation that you're not using? So Gross Venturi Tribe comes from – is 49F3801.814. And it – it stands for the same premise? It does. It does, Your Honor. And it actually – and it goes through – opposing counsel briefly mentioned some issues with sovereign immunity. It goes through and considers those and then ultimately decides that separately, aside from sovereign immunity, 706.1 is jurisdictional based on the language Justice Scalia used in his Southern Utah Wilderness Alliance about the authority of the courts. What if we were to hold that this was a discreet action? How do you see the litigation playing out in that event? Well, Your Honor, so I'm not really sure. Because I – because I don't see any discreet agency action, I'm not exactly sure how it would play out. So if we disagree with you regarding whether there was a discreet agency action, do you concede defeat? No, Your Honor. You – as I said earlier, you can still affirm on any of the grounds and on the prudential standing or the constitutional standing or any of the other grounds used by the district court, but we think that this is simply – we think that this is the clearest way because we don't see any discreet duty in any of these statutes. In your view, what would be the parade of horribles that would ensue if we were to adopt counsel's articulation of the way we ought to order this case to be decided? Well, Your Honor, first of all, I wouldn't understand – I wouldn't understand how they have a beneficial right, because I don't see them as either contract holders, which would be the way you would get a beneficial right in – under Federal law, or appropriators under – which is how you would get a beneficial right under State law. So I'm not sure, based on the articulation that he gave, how he could possibly be a right holder. But how would that – okay. So you wouldn't understand it, but what would be horrible about it? Yeah. Let's just say – let's just say for sake of argument that we disagree with you and all of a sudden you're confronted with that language. What's the impact of that on – on reclamation, the statute, the other interests, and everything else? Well, so the – the – I mean, the impact on reclamation is, I would imagine, it's sort of cast into sea without a compass. The – I mean, reclamation is doing its best to follow the demands of Congress that have been issued under the CVPIA, which it believes to be the most current explanation of what to do with the project water. But if you came and said that, well, no, the farmers have this right that we can't figure out where it exists from, then the Bureau of Reclamation – Well, we would figure out something, trust me. I know you would. I don't mean to say that you wouldn't. And you would be happy that Justice Scalia is still on the Supreme Court. Yes, Your Honor. But that – I mean, I believe that that – you asked for what – for what we think is the negative result, and I believe that the Bureau not knowing exactly what to do in any individual case is the result we would be most concerned with. So, Your Honors, I don't know. It doesn't appear that you have any further questions. Well, I just – I'm just curious, if we don't agree with the standing arguments, do you – what's your position on the merits, the merits of the case? If you had to go beyond the standing issues and address the actual merits, could you do that? Well, so the – I mean, I guess – I guess there are sort of – there are two questions, because, one, based on the nature of their complaint, even if the – even if a court addresses the merits, we don't really understand how that – like, how that gets around Section 706-1. Because even if you say, well, the district court should go address this on the merits, they will do so, but eventually they're going to have to enter an order. And we don't see how they can enter an order. Even if you say – even if you say that opposing counsel is right, we don't see what order – we don't really see what order they could issue. You would say the only order they could issue is comply with the Improvements Act. Yes, Your Honor. And we – and – Nowhere. And nothing has happened. We don't think anything has changed. And your reclamation would say, we are. Exactly. That's – that is the position of the government. Well, you – the district court's opinion. On occasion, we adopt the district court's opinion as our own. I'm not saying we are – we're going to do that, but is there anything in the district court's opinion that you find gives the government particular heartburn in terms of dealing with these kinds of cases? You don't sound too comfortable with it. I mean, Your Honor, I think based on – based on our presentation in the briefs and the way we've addressed the issues, it is fairly clear that we think we have a decided opinion on what the best way to go – to go about this is. Okay. And we're not – It's not the same as the district court. It's not exactly the same as the district court. We admit that. Yes, Your Honor. Thank you. All right. Are there any further questions? It appears not. Thank you. How much did – how much did we ruin your prepared presentation? I have barely looked at it, Your Honor. That's the practice pointer for people in the audience. Get ready for questions. Well, thank you very much. The government rests. Thank you. Counsel will give you one minute for rebuttal. The government was generous. Thank you. I think a very important point is the government's statement that the farmers are not rideholders. I think this Court needs to take a hard look at that and ask – and look at the Supreme Look at the State Water Resources Control Board cases that were decided by Judge Roby in 2006. That's a state case. And take a look at the Federal Circuit case that addressed the issue of who owns the beneficial – in a reclamation project, who owns the beneficial right to water. So you think Israel versus Morton is just flat wrong? Israel versus Morton doesn't even address Section 8. Israel versus Morton doesn't even address the division of rights between the Bureau and those who put the water to use. Israel versus Morton is irrelevant. So, Counsel, when you were here before, you didn't address the procedural issues, the standing issues. So I take it that you disagree with the district court's determination and the government's position that there is no standing for your clients. Your Honor, I think it's pretty clear that the district court went to the merits to determine whether or not there was a sufficient clear duty or not. It determined on the merits that there wasn't, and therefore, it held that there was no standing. That's how I read the district court's decision, effectively. It was a little convoluted. Yeah. But that – it was – the standing decision was predicated on the merits. I don't think that's necessarily – I mean, I don't agree with the district court's decision on the merits. And just like Counsel before me, you know, he wants to do it a little bit different way. But the point is, is that on the merits, the Bureau needs to be held to what the words of the statutes are. And if it's not held – it doesn't have broad discretion to do whatever it wants. It has – there are controlling laws here. And if there were subsequent enactments that specifically repealed or amended these provisions, that has to be considered. But that hasn't happened. The terrible plight of your clients and agricultural interests has been readily apparent for a long time. Has any effort been made to get Congress to address the situation that you bring to the courts? Many times. And what's happened? It's Congress. That's a hell of a good answer. It's not – and the point is, is that Congress did act in 1960. The question is, what did it do afterward? That's really what is at issue here. It's not whether or not – we believe there are mandatory duties in the statutes that led up to the creation of this gigantic project. We don't believe there are contrary mandates. But at least that ought to be litigated. It hasn't been litigated. We understand your position. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the Court.
judges: Block, Trott, Rawlinson